UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VELDA PATTERSON, Personal
Representative of the Estate of
DEBORAH SWETT, Deceased,
and KERWIN SWETT,

       Plaintiffs,                        Case Number: 05-71485

v.                                     Honorable Victoria A. Roberts

STONEBRIDGE LIFE INSURANCE
COMPANY,

       Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

       This matter is before the Court on Defendant's Motion for Summary Judgment. Oral argument was held on August 18, 2005. For the following reasons, the Court **GRANTS** Defendant's motion.

**II.    BACKGROUND**

       The Plaintiffs, Velda Patterson, personal representative of the estate of Deborah Swett, deceased, and Kerwin Swett, bring this action against Stonebridge Life Insurance Company ("Stonebridge") claiming that Stonebridge wrongfully denied

1

payment of death benefits from an accidental-death-and-dismemberment insurance policy.

On August 25, 2003, Deborah Swett was involved in an automobile accident. A short time later she complained of pain in her shoulder and chest wall. As a result, she began sleeping in a chair. On October 7, 2003, Ms. Swett went to the hospital after experiencing a fainting episode. At the hospital, she collapsed and became unresponsive. Efforts to revive her proved unsuccessful and Ms. Swett was pronounced dead in the early morning hours of October 8, 2003.

Dr. Yung Chung, the Assistant Medical Examiner for the Wayne County Medical Examiner's Office, performed an autopsy and determined the cause of death to be pulmonary embolism originating from a deep vein thrombosis ("DVT") in the right leg. Blood clots were found in the pulmonary arteries of the decedent's lungs. Fresh blood clots were found in the deep vein of her right leg. Dr. Chung determined that the blood clots from her right leg traveled to her lung, which caused her death. Dr. Chung further stated that there was no evidence of recent injury and the manner of death was natural. Chief Medical Examiner Dr. Carl Schmidt confirmed these findings and noted that the decedent's lower extremities were swollen from sleeping with her legs in a dependent position (referring to the decedent having slept in a chair). The swelling indicated venous stasis, which was the immediate cause of the thrombi in the lower extremities. In addition, Dr. Schmidt opined that decedent's obesity worsened the venous stasis. The decedent was 5 feet 10 inches tall and weighed 360 pounds. Dr. Arun Singal, the decedent's regular treating physician, concluded as the other two doctors did, attributing

the immediate cause of death to a pulmonary embolism. However, he also stated that 'sleeping in the chair and the injuries from the car accident were responsible for the cause of the pulmonary embolism' and ultimately, her death.

Stonebridge issued a life insurance policy in the event of accidental death on May 24, 1993 to Ms. Swett.  Under the terms of the policy, benefits were payable if Ms. Swett was "injured in consequence of occupying a private passenger vehicle," with "injured" defined in the policy to mean:

> having suffered a bodily injury caused by accident occurring while the insurance is in force resulting:
> i. directly and independently of all other causes; and
> ii. within 90 days after the date of the accident. Loss commencing more than 90 days after the date of the accident will be considered a sickness.

The policy also stated that "[n]o benefit shall be paid for Loss or Injury that . . . is due to disease; bodily or mental infirmity; or medical or surgical treatment of these."

Upon Ms. Swett's death, the Plaintiffs filed a claim to receive benefits. Stonebridge denied the claim, stating that the terms of the policy and the circumstances of Ms. Swett's death preclude benefits.  In response, the Plaintiffs filed this action.  The Defendant now moves for summary judgment claiming that there is no genuine issue of material fact over the cause of Ms. Swett's death.  Defendant asserts that Ms. Swett's obesity, which Defendant asserts is a disease and/or bodily infirmity, at least contributed to her death.  Based on the insurance policy language, this would preclude Plaintiffs from recovery.

3

III.     **STANDARD OF REVIEW**

Under Fed. R. Civ. P. 56(c), summary judgment may be granted, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.2d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, *supra*, at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party has no evidence to support an essential element of his or her case on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to

support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Fed. R. Civ. P. 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. "The mere existence of a scintilla of evidence to support the nonmoving [parties] position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party." *Id.*; *see also Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

IV. **APPLICABLE LAW & ANALYSIS**

A. **Interpretation of "disease" - - does it include obesity?**

A central issue in this case is interpretation of the terms of the life insurance policy. Therefore, the Court must "look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction." *Henderson v. State Farm Fire & Casualty Co.*, 460 Mich. 348, 353 (1999) *citing Arco Industries Corp. v. American Motorists Ins. Co.*, 448 Mich. 395, 402 (1995). In Michigan, courts are to read the contract as a whole to determine the parties' agreement. *Heath v. State Farm Mutual Automobile Ins. Co.*, 255 Mich. App. 217, 218 (2002) *citing Royce v. Citizens Ins. Co.*, 219 Mich. App. 537 (1996). For terms defined in the policy, the contract is interpreted according to those definitions. *Id.* Undefined terms, however, are interpreted according to their commonly used meaning

and the parties' reasonable expectations. *Id.* The court should take care not to create an ambiguity where the terms of the contract are clear and precise. *Id*.

The Plaintiffs argue that the insurance policy does not define disease or bodily infirmity, and therefore, the terms are inherently ambiguous. Accordingly, says Plaintiffs, the policy should be interpreted in favor of the insured and the exclusionary clause, which denies benefits if another cause contributes to death, should not apply. While it is true that insurance policy ambiguities are construed in favor of the insured, failure to define a relevant term does not automatically render the policy ambiguous. *Heath, supra,* at 218. Ambiguity arises only when, after reading the entire policy, the language can be reasonably understood in different ways. *Id*.

After reviewing the entire contract, the Court concludes that the terms are not ambiguous. "Disease" and "bodily infirmity" are conventional terms within the English language and the Court will construe the terms according to their plain meaning. Using *Black's Law Dictionary* 480 (7th ed. 1999), the Court defines disease to mean "(1) a deviation from the healthy and normal functioning of the body." In addition, infirmity is defined as a "physical weakness caused by age or disease." *Id*. at 782.

Further, the Defendant provides materials from the National Institutes of Health ("NIH") and the American Obesity Association ("AOA")to buttress its position that obesity is a disease. The NIH states, "[o]besity is a complex multifactorial chronic disease that develops from an interaction of genotype and the environment." [Defendant's Reply, Exhibit 2, p. 2](emphasis added). Additionally, the AOA characterizes obesity as "a chronic disease that afflicts approximately 9 million adult

Americans." [Defendant's Reply, Exhibit 3, p. 1](emphasis added).  In addition to its characterization as a disease, the AOA also lists DVT as an obesity related medical condition.

The reports of the NIH and AOA may properly be considered by the Court. Without deciding if the reports are within the scope of evidence generally considered when ruling on motions for summary judgment, the Plaintiff waived any argument against their admissibility by failing to object.  "If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the appellate court] will review such objections only to avoid a gross miscarriage of justice."  *Johnson v. U.S. Postal Service*, 64 F.3d 233, 237 (6th Cir. 1995)(*citing Wiley v. U.S.* 20 F.3d 222, 226 (6th Cir. 1994)).

The Plaintiffs did not provide the Court with any evidence to refute the Defendant's contention that obesity is a disease.  Rather, the Plaintiffs simply relied on their own unsupported allegations that the term disease was ambiguous. Consequently, the Plaintiffs failed to demonstrate a genuine issue of material fact and failed to demonstrate that obesity should not be considered a "disease" under the terms of the insurance policy.

    **B.**    **Obesity as a contributing factor in decedent's death**

The Plaintiffs argue that *Harrison v. Monumental Life Ins. Co.*, 333 F.3d 717 (6th Cir. 2003) is controlling. In *Harrison*, the decedent was struck by a truck and suffered

multiple fractures. While in the hospital for treatment, the decedent developed acute pneumonia and died. The decedent was insured under a policy that contained both a "sole cause" and "exclusionary" clause. The "sole cause" clause stipulated, "[i]njury must be the direct cause [of] death and must be independent of all other causes." *Id*. at 718. The "exclusionary" clause precluded payment for "loss which is caused by, results from, or contributed to by . . . sickness or its medical or surgical treatment, including diagnosis[.]" *Id*. at 718-19. If the policy contained only the "sole cause" clause, "the claimant [could] recover, even where pre-existing conditions combine with accidental injuries, if he shows that the accidental injury was the efficient, dominate, and proximate cause of death of the insured." *Id*. at 722 (citation omitted). "If, however, the insurance policy contain[ed] an "exclusionary" clause, which expressly negates coverage where a pre-existing disease plays any part in the insured's death, the claimant must show that the accident itself was sufficient to cause death." *Id*.

Based on decedent's extensive medical history of various ailments which the defendant claimed included chronic pneumonia, the defendant refused to pay benefits. At trial, the medical examiner testified that the fractures sustained in the accident, along with the resulting acute pneumonia, were the sole cause of death. The medical examiner also stated that decedent's pre-existing illnesses did not play any part in his death. The defendant's expert, however, concluded that the cause of death was pre-existing chronic pneumonia. The court found the medical examiner's testimony more credible and found acute pneumonia to be the sole cause of death.

Ms. Swett's insurance policy contains both a sole cause and exclusionary clause,

with wording similar to *Harrison*. Under the policy, the Plaintiffs contend they are entitled to benefits because, like *Harrison*, the pulmonary embolism did not arise from any pre-existing condition, but developed from the accidental injuries. In support of their argument, the Plaintiffs reference the letter from Dr. Singal, which stated that he believed "sleeping in the chair and the [accidental] injuries were responsible for the cause of the pulmonary embolism." The Plaintiffs explain that after the automobile accident Ms. Swett developed chest and shoulder pain that caused her to begin sleeping in a chair. As a consequence of sleeping in a dependent position, she developed DVT in her right leg. The DVT caused the pulmonary embolism and eventually, Ms. Swett's death.

Plaintiffs' reliance on *Harrison* is misplaced. To survive Defendant's motion for summary judgment under *Harrison*, the Plaintiffs need to show that obesity, a pre-existing disease, was not a contributing factor to the decedent's death. However, the Plaintiffs acknowledge that Dr. Schmidt, the Chief Medical Examiner, concluded that Ms. Swett's obesity contributed to her death by worsening the venous stasis and they do nothing to refute the allegation. [Plaintiffs' Response, p. 4-5]. Instead, the Plaintiffs argue that because the letters of two other doctors did not state that obesity was a contributing factor, it should not be considered as such.

The Plaintiffs relied on letters from two doctors for the proposition that obesity was not a contributing factor, however, the letters merely opine that obesity was not the sole cause. The Plaintiffs could have provided evidence from Dr. Singal or Dr. Chung that explicitly state a belief that the decedent's obesity did not contribute to her death.

9

Instead, the Plaintiffs relied upon Dr. Singal's letter, which made no mention of obesity, nor did it refute Dr. Schmidt's conclusion that decedent's obesity worsened the venous stasis and contributed to Ms. Swett's death.  The burden is on the non-movants to provide sufficient evidence to support their position and the Plaintiffs failed to do so. Accordingly, the Court finds there is no genuine issue of material fact for trial.

**V.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**


                                                        s/Victoria A. Roberts_____
                                                        Victoria A. Roberts
                                                        United States District Judge

Dated: October 6, 2005

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 6,2005.<br><br>s/Linda Vertriest_____<br>Deputy Clerk |